## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CARLA FLOOD**<br>**1380 Monroe Street NW, #737**<br>**Washington, D.C. 20010,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No.:  18-803** |
| | * | |
| **THE UNITED STATES DEPARTMENT**<br>**OF THE NAVY** | * | |
| | * | |
| **And** | * | |
| | * | |
| **RICHARD V. SPENCER, SECRETARY,**<br>**UNITED STATES DEPARTMENT OF**<br>**THE NAVY, IN HIS OFFICIAL**<br>**CAPACITY** | * | |
| | * | |
| **Serve On:** | * | |
| **United States Department of the Navy**<br>**General Litigation Division** | * | |
| **1322 Patterson Avenue, Suite 3000**<br>**Washington Navy Yard, DC 20374-5066** | * | |
| **Defendants.** | * | |

*    *    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT

Comes now Plaintiff Carla Flood, through undersigned counsel, and files this complaint of employment discrimination pursuant to Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, and states as follows:

I.     Introduction

1.     Carla Flood who informally goes by Mary Flood is legally blind and successfully achieved employment with the United States Department of the Navy as an Educational

Technician CY-1702-02 at the Child Development Center at the Naval Support Activity Bethesda, Commander Navy Installations Command (CNIC), in Bethesda, Maryland.

2.     Approximately a day and a half into her employment, the Navy terminated Flood solely on the basis of her legal blindness without an individual assessment of whether Flood could perform the essential functions of the job and without engaging in an interactive process to determine whether accommodations or modifications would address the concerns the Navy purportedly possessed about a legally blind person working with children.

3.     Ms. Flood filed her informal complaint of employment discrimination on February 9, 2017.  She then filed a formal complaint on May 3, 2017.  An investigation then ensued with the Report of Investigation being forwarded on August 30, 2017.  She received the Navy's final agency decision on January 11, 2018.  Thus, this action is timely filed.

II.     Jurisdiction and Venue

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331 and 1343 for Plaintiffs' claims arising under Section 501 of the Rehabilitation Act of 1973 ("Section 501", 29 U.S.C. §§ 791).

5.     Plaintiff Flood is a resident of Washington DC now and during the time of the acts described in this Complaint.

6.     Defendant, Richard V. Spencer, is the Secretary of the Department of the Navy and with respect to the allegations in this Complaint was acting in his official capacity. Defendant is in charge of the United States Navy Department. Defendant Department of the Navy is a branch of the United States military whose mission is to maintain, train and equip combat-ready naval forces capable of winning wars, deterring aggression and maintaining

freedom of the seas.  The Department of the Navy is headquartered in Washington DC and recruits, develops, and retains both a military and a civilian workforce.

7.      All of the acts, violations of law, and injuries relevant to this complaint occurred in the District of Columbia or its inner ring suburbs.

8.      Thus, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this district and because acts constituting violations of Section 501 complained of occurred in this district.

III. Parties

9.      Plaintiff Flood is legally blind due to retinopathy of prematurity.  Her disability affects the major life activity of seeing.  She must use various accommodations to compensate for her impaired vision. For example, she uses glasses and other magnifiers to help her see objects and to read printed materials.  It is very helpful for her to use large print and thus she uses screen enlargement tools and software to access the computer effectively.  She will often use a white cane to assist in mobility, especially in unfamiliar surroundings.  Finally, as a consequence of her disability, she is not able to drive.

10.     Flood has a master's degree in social work, is a licensed graduate social worker and has held a number of positions relevant to her degree and profession.  Recently she has been contemplating a change to a career in education.  She has taught Sunday school for several years, and prior to accepting the job with the Navy, she was working part-time as a kindergarten literacy tutor.

11.     The Department of the Navy (Navy) is one of the Country's major military branches and offers civilian employment in a wide variety of careers and professions outside of its primary military mission.  Relevant to this complaint, the Navy operates child development

centers offering employment in educational careers.  One such center is located at the Navy's

operations in Bethesda, Maryland where Plaintiff Flood had been hired and assigned.

IV. Facts Relevant to Plaintiff's Complaint

12.  Plaintiff Carla Flood is an individual with a disability under Section 501 in that her

legal blindness substantially impairs the major life activity of seeing.

13.  Flood is a qualified individual with a disability under Section 501 in that she can

perform the essential functions of an Educational Technician for the U.S. Navy with or without

reasonable accommodations.

14.  On December 14, 2017 Flood participated in a job fair hosted by the Navy in Silver

Spring, Maryland and applied for the Educational Technician position.  Because she was using a

white cane for mobility and because she accepted assistance finding various stations at the fair,

at the time, those interviewing Flood knew that she had a disability.   During the Navy's

investigation, those who interviewed Flood freely admitted that they were aware that Flood is

disabled.

15.  The interview went well and Flood received a provisional offer of employment.  As

part of the offer, the personnel on site at the job fair instructed her to report for a physical exam.

16.  Flood appeared for the physical at Walter Reed Medical Center on December 20,

2016.

17.  Throughout the examination, the nurse assigned to her and the examining physician,

Dr. Sharda Kaytal, continually challenged her on how she could safely monitor children while

performing her job. Flood patiently explained how she employed a variety of techniques to

supervise and monitor children.  She also repeatedly stated that she is legally blind, which does not mean that she has no vision.  In fact, she still possessed useful, residual vision that can be augmented by magnifying devices.  She informed the doctor that she could perform the duties of an Educational Technician without difficulty.  Nevertheless, the doctor never entered into an interactive process with Flood to explore whether Flood would require reasonable accommodations to perform the essential functions of her position.

18.  Flood's next contact with the Navy was January 13, 2017, when she received an email from a Gelila Gebrehiwot, a human resources official employed by Defendant,  informing her that she had been hired and was to report to the Bethesda facility on January 17, 2017 for training and other initial employment procedures.

19.  On January 17, 2017, Flood reported to the Bethesda facility and went through the training and orientation like all the other new employees.  With her residual vision, she successfully filled out all paperwork presented to her and did not request assistance because she had no trouble doing so.  One of the forms she completed contained a section in which she again disclosed her disability.  Neither this completed form nor the obvious presentation of her disability ever triggered the Navy to enter into an interactive process to discuss Flood's disability.

20.  Flood again reported on January 18, 2017, and completed approximately one-half day of training.

21.  Around noon on January 18, 2017, Ms. Charlette Ballard, another human resources employee of Defendant, asked Flood to report to human resources.  Flood entered a room with Ballard and Gelila Gebrehiwot present.

22.  At this time, Ballard first asked Flood if she was legally blind.  Flood responded by saying that yes she is and that she had never hidden that fact from the Navy from the time of her initial interview, at the physical examination, and during her training.  Her disability was obvious as evidenced by the use of her white cane and magnification devices.

23. Ballard then informed Flood that she was being terminated because the doctor who examined her recommended that Flood not be retained.

24.  Flood was shocked and dismayed and questioned why.  Ballard explained that the doctor had indicated that Flood had no vision and that she should not work with children. Ballard added that Flood had never requested any accommodations.

25.  Flood proceeded to visually describe the room in which they were sitting and what everyone was wearing.  She further explained that she had not yet asked for any accommodation because nothing had occurred that required her to do so.  If her employment would have continued, she may have come across a situation where she might have requested an accommodation.  However, at the time of her original training, Flood believed fully that she could perform the essential functions of the job and did not anticipate any specific accommodation.

26.  Flood further explained to Ballard that she had quit her part-time job in reliance on being hired by the Navy.  Ballard left the room and returned and stated that there was nothing more she could do and that the Navy had no choice but to terminate her employment because Flood did not possess 20/20 vision, an alleged requirement of the job.

27.  After being terminated, Flood discovered that the individual responsible for her termination is Jamila Aziz, Director of the Child Development Center.  Ms. Aziz directed Ballard and Gebrehiwot to terminate Flood because she had failed the physical examination.  In

doing so, Aziz told Ballard that she (Ms. Aziz) did not care what anyone says, going forward she wanted a completed medical before anyone goes into her center and to please get rid of Flood.

28.   As a direct and proximate result of the Defendant's conduct as described above, Plaintiff Flood has been severely damaged, in that, among other things, she has experienced and will continue to experience significant pecuniary losses, including lost pay and benefits, lost earning capacity, mental anguish and emotional distress as manifested by a variety of physical and emotional symptoms, and the loss of life's enjoyment.

V.  Count I, Intentional and Unlawful Termination Based on Disability

29.   Plaintiff Flood incorporates by reference Paragraphs 1 through 28 as if they were set out in full here.

30.   Plaintiff is a qualified individual with a disability who can perform the essential functions of an Educational Technician at the Navy's Child Development Center located at Bethesda, Maryland.

31.   The Defendant, Department of the Navy, terminated Flood solely on the basis of its assumptions and stereotypes about her disability.

32.   Before terminating her, Defendant never entered into an interactive process to explore whether any reasonable accommodations would address its purported concerns.

33.   Requiring the possession of physical attributes rather than considering a person's ability to perform essential job functions with or without reasonable accommodations is a form of blanket discrimination based on disability.

34.   This blanket discrimination and Defendant's termination of Flood solely on the basis of her disability violate Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791.

VI.  Count II, Intentional and Unlawful Denial of Reasonable Accommodations

35.  Plaintiff Flood incorporates by reference Paragraphs 1 through 28 as if they were set out in full here.

36.  During her very brief employment with Defendant, Department of the Navy, Plaintiff Flood did not formally request reasonable accommodations because she was not yet aware of any she needed to request. During her one and a half days with the Navy, she completed all required tasks without accommodations.

37.  As stated above, Defendant summarily terminated Flood and never even explored entering into an interactive process with Flood to identify accommodations to address the Navy's concerns.

38.  The Navy's failure to enter into an interactive process and provide reasonable accommodations to Flood from the time of her physical examination forward violates Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791.

VII.  Prayer for Relief

WHEREFORE, Plaintiff Flood respectfully requests that this Court:

39.  Declare that, as a result of conduct described herein, the Defendant has intentionally violated Plaintiff Flood's rights under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791.

40.  Grant a permanent injunction enjoining Defendant, its officers, agents, successors, assigns, and all persons in active concert or participation with it from (a) unlawfully failing to provide equal employment opportunities to Plaintiff; b) from unlawfully failing to provide reasonable accommodations to Plaintiff if needed; c) from engaging in any other employment practices that discriminate on the basis of Plaintiff's disability; and d) to place Plaintiff in a

suitable position at the Department of the Navy with all accommodations that are reasonable and appropriate.

41.   Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities, and eradicate the effects of its past and present unlawful employment practices.

41.   Award Plaintiff Flood all damages to which she is entitled including, but not limited to, all special, general, compensatory, punitive, exemplary, or other damages, pursuant to Section 501 of the Rehabilitation Act, 29 U.S.C. §§ 791 et seq. or as otherwise authorized by law.

42.   Award Plaintiff Flood her attorneys' fees and costs pursuant to the Rehabilitation Act and as otherwise authorized by law.

43.   Award Plaintiff Flood pre-judgment and post-judgment interest to the extent authorized by law.

44.   Award Plaintiff Flood such further relief as the court deems necessary and proper in the public interest.

DATED this Ninth Day of April, 2018.

Respectfully submitted,

/s/ Eve L. Hill
Eve L. Hill, D.C. Bar No. 424896
Kobie A. Flowers, D.C. Bar No. 991403
Stuart O. Simms (*To seek admission Pro Hac Vice*)
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
T: (410) 962-1030
F: (410) 385-0869
ehill@browngold.com
kflowers@browngold.com
sos@browngold.com

*/s/ Scott C. LaBarre*
Scott C. LaBarre
***(To seek admission Pro Hac Vice)***
LABARRE LAW OFFICES
1660 South Albion, Suite 918
Denver, CO  80222
T: (303) 504-5979
F: (303) 758-6150
slabarre@labarrelaw.com

*Attorneys for Plaintiff Flood*